So Ordered.

Dated: November 20th, 2020



Frederick P. Corbit
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>DANIEL EDWIN & COLETTE OPAL BRAMLETT,<br><br>                      Debtors. | Case No. 20-00029-FPC7 |
| KEVIN D. O'ROURKE, Chapter 7 Trustee,<br><br>                      Plaintiff,<br>v.<br><br>THE 2017 MARK LAMB TRUST; JULIANNE (SARA) WILLIAMS-HESSEMAN, TRUSTEE; AND JOHN DOE WILLIAMS-HESSEMAN, husband and wife, and DANIEL EDWIN and COLETTE OPAL BRAMLETT, husband and wife,<br><br>                      Defendants. | Adversary No. 20-80012-FPC<br><br>**<u>NOT FOR PUBLICATION</u>**<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND TURNOVER ORDER** |

## SUMMARY

Under California law, after an amount of trust principal has become due and payable (but has not yet been distributed), a creditor can petition to have the trustee

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 1

pay directly to the creditor a sum up to the full amount of that distribution unless the trust instrument specifies the distribution is for the beneficiary's support or education and the beneficiary needs the distribution for those purposes. *Carmack v. Reynolds*, 391 P.3d 625, 215 Cal. Rptr. 3d 749 (2017). Where the trust provides for, and the beneficiary needs, the distribution for support or education, the creditor may petition for up to twenty-five percent of the payments expected to be made to the beneficiary. *Id.* In this case, the controlling issues are whether the Mark Lamb Trust principal distribution meant for the Debtor Colette Bramlett is "due and payable" and if so, whether the Trust provides for the support and education of Ms. Bramlett.

While it is widely recognized that the California Probate Code provisions relating to spendthrift trust provisions are "opaque,"[1] and "anything other than crystal clear,"[2] the California State Supreme Court has provided guidance in the *Carmack* decision. Applying *Carmack,* this Court concludes that Debtor Colette Bramlett's distribution from the Trust is presently "due and payable," and because the spendthrift provision explicitly provides for Ms. Bramlett's support and education, the Chapter 7 Trustee is entitled to collect twenty-five percent of the total Trust payments expected to be made to Ms. Bramlett.

---

[1] *Carmack*, 391 P.3d at 626 (2017), *quoting Frealy v. Reynolds,* 779 F.3d 1028, 1029, (9th Cir. 2015).
[2] *Frealy,* 779 F.3d at 1032.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 2

# FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

This adversary case was commenced on April 28, 2020 by Chapter 7 Trustee Kevin O'Rourke. (Adv. Case No. 20-80012, ECF No. 1). At a hearing on July 14, 2020, the parties agreed that the Court should decide this case based upon declarations and stipulated facts. (ECF No. 34) The Court considered the related pleadings, declarations, exhibits, and the statements of material facts submitted by the parties. Based on the foregoing, the Court enters the following findings of fact, conclusions of law, and order:

## FINDINGS OF FACT[3]

1. On February 7, 2017, Mark Lamb executed a Last Will and Testament of Mark Lamb and a Declaration for Trust for the 2017 Mark Lamb Trust ("the Trust"). (Adv. Case No. 20-80026, ECF No. 36) Both the Trust and Mark Lamb's Last Will and Testament were signed in Sonora, California.

2. Mark Lamb died on March 4, 2018.

3. Mark Lamb was the father of Debtor Colette Bramlett, who was one of four named beneficiaries of the Trust. Another daughter, Julianne (Sara) Williams-Hesseman, was named the trustee of the Mark Lamb Trust.

---

[3] Where a finding of fact is a conclusion of law, it shall be treated as such and vice versa.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 3

4. Trust Article IV governs distributions from the Trust during the Settlor's life.

5. Trust Article VII instructs the trustee to distribute the estate upon the Settlor's death:

> A. On the Settlor's death, the Trustee shall distribute any remaining balance of the trust estate, including principal and accrued undistributed income, to whomever the Settlor shall appoint by Will or Codicil specifically referring to and exercising this power of appointment.
> \* \* \*
> B. On the Settlor's death, if and to the extent that the Settlor shall not have effectively disposed of all of the trust estate through a valid and effective exercise power of appointment, the Trustee shall hold, administer, and distribute the remaining trust estate as follows:
> \* \* \*
>> (4) I give, devise and bequeath all of the rest and residue of my property, whether personal or real, as follows:
>> \* \* \*
>>> b. One-fourth (1/4) thereof to my daughter, Collette Bramlett.

6. Trust Article VIII addresses the powers of the Trustee. The introduction states:

> To carry out the provisions of the trust created under this instrument and subject to any limitations stated elsewhere in this instrument, the Trustees shall have all of the following powers, in addition to all of the powers now or hereafter conferred on Trustees by the law.

7. Trust Article VIII(A)(30) authorizes the Trustee to defer distribution of the estate:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 4

> The Trustee may, in the Trustee's discretion, defer actual division or distribution for such reasonable period of time as is needed to effectively identify, take possession of, value, divide and distribute the assets of the trust. The ability of the Trustee to delay division or distribution shall not affect the vesting interests, which shall be as of the date of death.

8. Trust Article XIV is a spendthrift clause that states in full:

> [T]he interests of the beneficiaries are not transferable by voluntary or involuntary assignment or by operation of law, and shall be free from the claims of creditors and from attachment, execution, bankruptcy and other legal process, to the maximum extent permitted by law. If any such transfer is made or attempted by or against any beneficiary, all further trust payments of income or principal or both to that beneficiary (and any right of that beneficiary to such payments) shall be suspended for a period of time or indefinitely (and any right of that beneficiary to such payments) shall be suspended for a brief period of time or indefinitely (but in no case for longer than the term of the trust) as the trustee determines. **In lieu of payments to that beneficiary, the trustee may apply so much of the trust income or principal or both to which the beneficiary would otherwise be entitled as the trustee deems necessary for the beneficiary's education and support**. All trust income (to which the beneficiary would otherwise be entitled) not so applied shall in the discretion of the trustee be accumulated and added to trust principal at such time or times as the trustee deems proper.

(Emphasis added.)

9. Absent court authorization, Article VIII(A)(31) prohibits the trustee from terminating the Trust before the Trust term expires. The Trust term expires "twenty-one (21) years after the death of the last to die of the group consisting of

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 5

the Settlor and all living issue of the Settlor on the date of the Settlor's death."

Article IX(I).

10. Trust Article IX(D) states "the use of the word 'shall' indicates a mandatory direction, while the use of the word 'may' indicates a permissive, but not mandatory, grant of authority."

11. Debtors Daniel Edwin Bramlett and Colette Opal Bramlett filed a Chapter 7 bankruptcy petition on January 8, 2020. Plaintiff was appointed as the Chapter 7 Trustee in the Debtors' bankruptcy on the same day.

12. Schedule B, line 25 of Debtor's bankruptcy schedules lists an asset "Beneficiary of the 2017 Mark Lamb Trust" with an unknown value. Debtors claimed a beneficial interest in the Trust as an exempt asset under 11 U.S.C § 541(c)(2) on Schedule C.

13. On February 21, 2020, the Chapter 7 Trustee filed an Objection to Debtor's claimed exemption related to the Mark Lamb Trust. (ECF No. 28). On March 19, 2020, after no objections were filed, the Court entered an Order Disallowing Claim of Exemptions. (ECF No. 33).

14. The only property in the Mark Lamb Trust was real property commonly known as 5425 Dogtown Road, Coulterville, California (the "Coulterville Property").

15. On April 1, 2020, the Trust sold the Coulterville Property for $185,870.78. The proceeds of the sale were disbursed to the Mark Lamb Trust trustee, Ms. Williams-Hesseman.

16. The Chapter 7 Trustee initiated this lawsuit on April 28, 2020. The Chapter 7 Trustee requested the Court direct Ms. Williams-Hesseman to turn over $46,467.70, representing Ms. Bramlett's one-fourth proportional share of the proceeds from the sale of the sole asset of the Trust, the Coulterville Property.

17. Trustee/Defendant Julianne Williams-Hesseman's *pro se* Answer asserted several legal theories to support her defense that Ms. Bramlett's beneficial interest in the Trust is not property of Ms. Bramlett's estate, based on specific Trust provisions. One of the arguments Ms. Bramlett raised was that the Trust is a spendthrift trust with an anti-alienation provision, and therefore the trustee has the power to retain the property in the Trust and withhold distributions. Additionally, Ms. Bramlett argued that the exact dollar amount representing her one-quarter interest in the Trust could not yet be determined.

18. Debtor/Defendant Collette Bramlett's *pro se* Answer raised identical legal theories to support the defense that Trust property is not properly deemed property of her the bankruptcy estate.

19. Pending trial, the Court granted the Chapter 7 Trustee's motion for a restraining order, requiring the Trust to retain at least $46,467.70 until the Court decided this issue.

20. At a hearing on July 14, 2020, both parties agreed to forgo a trial, and stipulated that the Court should decide the case based on declarations and stipulated facts.

21. Ms. Williams-Hesseman, as trustee, made partial distributions of the proceeds from the Coulterville Property sale to two of the four Trust beneficiaries.

22. The parties to this dispute agree the sole issue is whether Ms. Bramlett's bankruptcy estate has a full one-quarter interest in the proceeds from the sale of the Coulterville Property.

23. The primary purpose of the Trust was to distribute the remaining balance of assets upon Mr. Lamb's death, in the proportional amounts as indicated in the Trust.

24. Because Mark Lamb died and subsequently the sole asset of the Trust was liquidated, Ms. Bramlett's share of the Trust has become due to her.

25. Under the terms of the Trust, Ms. Bramlett has no power or authority over the Trust: she cannot manipulate the Trust property; she is unable to make payments to herself; she has no ability to control the timing or manner of distributions; and she cannot terminate the Trust.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 8

20-80012-FPC    Doc 47    Filed 11/23/20    Entered 11/23/20 08:53:10    Pg 8 of 18

26. Ms. Bramlett does not have excessive control over the Trust.

27. The spendthrift provision of the Trust specifically contemplates involuntary assignment by operation of law under bankruptcy, and under such circumstances requires the trustee to suspend the affected beneficiary's income and principal distributions for a period of time or indefinitely, up to the termination of the Trust.

28. By its terms, the spendthrift clause does not extinguish Ms. Bramlett's beneficial interest.

29. Under the spendthrift provision of the Trust, the trustee may exercise discretion in providing for the beneficiary's education and support: "in lieu of payments to that beneficiary, the trustee may apply so much of the trust income or principal or both to which the beneficiary would otherwise be entitled as the trustee deems necessary for the beneficiary's education and support."

30. The Trust dictates that when a beneficiary's payments are suspended under the spendthrift provision, the trustee shall accumulate all trust income and add the income to the trust principal as the trustee deems proper.

31. While Ms. Bramlett's share of the Trust is suspended, it remains in existence. As such, she can expect future payment(s) from the Trust.

32. The combined monthly income of Ms. Bramlett's marital community is $2,249 and that income is exceeded by the marital community's combined

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 9

monthly expenses of $2,815. (Case No. 20-00029-FPC7 No. 1 at p. 36). Therefore, the Court finds that trust assets are necessary for the support of Colette Bramlett. No evidence has been presented to refute this finding.

33. Nevertheless, the Court finds that the funds necessary for the support of Ms. Bramlett will not exceed seventy-five percent of her share of the principal that is presently due and payable.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 1334(b), 157, and 11 U.S.C. § 105(a). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(A), (I), (J), and (O).

2. The bankruptcy estate consists of all of the debtor's interests in property (vested, contingent or speculative) as of the date of filing, as well as certain property interests that are acquired after the commencement of the case, including proceeds resulting from the sale, transfer, or other disposition of property that are otherwise part of the estate. 11 U.S.C. §§ 541(a)(1), (5), (6).

3. The duties of the Plaintiff as the Chapter 7 Trustee include collecting and reducing to money the property of the Debtor's bankruptcy estate. 11 U.S.C. § 704(a)(1).

4. Whether an interest is property of the estate is determined by examining the nature of the interest on the date the debtor filed the bankruptcy petition. *In re Schmitt*, 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997).

5. Although federal law determines whether a debtor's interest is property of the estate, state law determines the existence and scope of a debtor's property interest. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Cohen*, 300 F.3d 1097, 1104 (9th Cir. 2002).

6. "Assets transferred to an irrevocable trust do not become part of a bankruptcy estate unless the transfer or the trust is invalid." *United States v. Lawrence*, 189 F.3d 838, 845 (9th Cir.1999).

7. "The law applicable in determining the validity of the trust [of land] is the law that would be applied by the courts of the situs." Restatement (Second) of Conflict of Laws § 278 (1971). "For conflicts issues regarding interpretation of a real property trust instrument, the court should apply the laws of the state designated in the instrument." Bogert's The Law of Trusts and Trustees § 294 (2020), citing Restatement (Second), Conflict of Laws § 277 (1971). Because the Trust property was located in California and because the Trust was signed in California, the Trust is governed by California law.

8. "Except to the extent that the common law rules governing trusts are modified by statute, the common law as to trusts is the law of [California]." Cal. Prob. Code § 15002.

9. Under California law, a trust must be construed "according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible." *Davis v. Comm'r*, 394 F.3d 1294, 1299–300 (9th Cir. 2005), quoting *Newman v. Wells Fargo Bank, N.A.*, 926 P.2d 969, 973 (1996), quoting *Estate of Wilson*, 193 P. 581, 582 (1920). A court ascertains the intention of the testator by reading the trust instrument as a cohesive whole. *Davis,* 394 F.3d at 1299-300. If the intention of the testator is unambiguous from the face of the instrument, the rules of statutory construction do not apply, and the plain language of the trust governs its interpretation. *Id.*

10. A spendthrift trust is a trust that provides that the beneficiary's interest cannot be alienated before it is distributed to the beneficiary. Creditors of the beneficiary generally cannot reach trust assets while those assets are held by the trustee, even if the creditor has a secured judgement against the beneficiary. "The law permits such trusts because donors have 'the right to choose the object of [their] bounty' and to protect their gifts from the donees' creditors." *Carmack,* 391 P.3d at 627, quoting *Canfield v. Security-First Nat. Bank,* 87 P.2d 830, 835 (1939).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 12

11. The California Supreme Court recognizes that a spendthrift provision may shield a debtor in bankruptcy from liability on some debts: "That spendthrift provisions can work to beneficiaries' advantage in bankruptcy in this way has long been recognized as a characteristic of such provisions. (See Rest.3d Trusts, section 58, com. A, p. 367: 'An important byproduct of the limited spendthrift protection, however, is the again limited but nevertheless important insulation that may result from a discharge in bankruptcy.')." *Carmack,* 391 P.3d at 628.

12. In order to determine if the Plaintiff, as the Chapter 7 Trustee, can reach Ms. Bramlett's beneficial interest in the Trust, the Court applies the California Probate Code statutory provisions related to trusts and spendthrift provisions, and the cases interpreting the California Probate Code.

13. The California Probate Code applies to interpretation and enforcement of the spendthrift provision of the Trust. *See* Code §§ 15300-15309.

14. As the Ninth Circuit Court of Appeals observed, California's spendthrift trust-related "statutory provisions are 'opaque.'" *Carmack v. Reynolds*, 391 P.3d 625, 626 (2017), quoting *Frealy v. Reynolds* 779 F.3d 1028, 1029, (9th Cir. 2015).

15. The California Probate Code generally upholds spendthrift trust provisions related to trust income:

> Except as provided in Sections 15304 to 15307,[4] inclusive, if the trust instrument provides that a beneficiary's interest in income is not subject to voluntary or involuntary transfer, the beneficiary's interest in income under the trust may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary.

Cal. Prob. Code § 15300.

16. Similarly, the California Probate Code generally upholds spendthrift provisions for principal trust payments, with limitations and exceptions:

> Except as provided in subdivision (b) and in Sections 15304 to 15307, inclusive, if the trust instrument provides that a beneficiary's interest in principal is not subject to voluntary or involuntary transfer, the beneficiary's interest in principal may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary.

Cal. Prob. Code § 15301(a).

17. The California Probate Code's first limitation is that spendthrift provisions will not protect principal payments that are "due and payable" to a beneficiary:

> After an amount of principal has become due and payable to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor, the court may make an order directing the trustee to satisfy the money judgment out of that principal amount. The court in its discretion may issue an order directing

---

[4] The *Carmack* court extensively analyzed California Probate Code section 15307 in an attempt to harmonize its provisions with the spendthrift trust related California Probate Code sections. Unable to harmonize that provision, the *Carmack* court concluded section 15307 "reflects a drafting error," and its enactment was "inadvertent." *Carmack*, 391 P.3d at 631.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 14

>    the trustee to satisfy all or part of the judgment out of that
>    principal amount.

Cal. Prob. Code § 15301(b). [5] "Due and payable" is not defined in the statute.

18.     The California Supreme Court found that "timing is critical" when determining "due and payable" under Code section 15301(b): "it reaches only those amounts which are presently set to be paid to the beneficiary. The provision thus requires an amount of principal to 'ha[ve] become' due to the beneficiary, at which point upon a creditor's petition, the court may enter an order 'directing the trustee to satisfy the money judgment out of that principal amount.'" *Carmack*, 391 P.3d at 628.

19.     Additionally, Code "section 15301(b) is properly viewed not as an exception to the general spendthrift protections but as a corollary." *Carmack v. Reynolds*, 391 P.3d at 628. "A distribution of principal is reasonably understood to signify that the amount distributed has satisfied its trust purposes. Because the beneficiary's interest in those assets has effectively vested, the law no longer has any interest in protecting them...." *Id.*

20.     Ms. Bramlett's share of the Trust is presently "due and payable."

---

[5] A bankruptcy trustee, standing as a hypothetical lien creditor, can reach a debtor's beneficiary interests by the procedure set forth in Cal. Civ. Proc. Code § 709.010. *In re Nolan*, 618 B.R. 860, 868 (Bankr. C.D. Cal. 2020), citing *Carmack*, 391 P.3d at 632.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 15

21. An additional limitation on the ability of a creditor to reach trust assets – income or principal – under Code § 15301(b) arises when a trust provides that the trustee shall pay income or principal for the beneficiary's education or support:

> Except as provided in Sections 15304 to 15307, inclusive, if the trust instrument provides that the trustee shall pay income or principal or both for the education or support of a beneficiary, the beneficiary's interest in income or principal or both under the trust, to the extent the income or principal or both is necessary for the education or support of the beneficiary, may not be transferred and is not subject to the enforcement of a money judgment until paid to the beneficiary.

Cal. Prob. Code § 15302.

22. Finally, where a California trust contains a valid spendthrift provision, a creditor may reach a beneficiary's future payments, but the creditor is limited to twenty-five percent of the beneficiary's payment:

> (a) Notwithstanding a restraint on transfer of the beneficiary's interest in the trust under Section 15300 or 15301, and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary.
> (b) An order under this section may not require that the trustee pay in satisfaction of the judgment an amount exceeding 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary.
> (c) An order under this section may not require that the trustee pay in satisfaction of the judgment any amount that the court determines is necessary for the support of the beneficiary and all the persons the beneficiary is required to support.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 16

Cal. Prob. Code § 15306.5.

23. The *Carmack* court summarized its holding that a bankruptcy trustee can reach some of a beneficiary's interest in trust principal in two ways:

> It may reach up to the full amount of any distributions of principal that are currently due and payable to the beneficiary, unless the trust instrument specifies that those distributions are for the beneficiary's support or education and the beneficiary needs those distributions for either purpose. Separately, the bankruptcy trustee can reach up to 25 percent of any anticipated payments made to, or for the benefit of, the beneficiary, reduced to the extent necessary by the support needs of the beneficiary and any dependents.

*Carmack*, 391 P.3d at 632.

24. The spendthrift provision of the Trust is valid under California law. The Trust became irrevocable upon Mr. Lamb's death.

25. Because the Trust spendthrift clause commands the Trustee to suspend all payments to a beneficiary whose interests are being claimed by the operation of law related to a bankruptcy, and instead, to supply only amounts that the trustee deems necessary for the beneficiary's education and support, and because the California Probate Code protects payments necessary for education and support, the Chapter 7 Trustee has no ability (subject to the partial exception described in the next paragraph) to access Ms. Bramlett's share of the proceeds from the sale of the Coulterville property, Trust principal that is due and payable.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 17

26. By contrast, because Ms. Bramlett's right to payments is merely suspended and not extinguished, the Chapter 7 Trustee may claim up to twenty-five percent of Ms. Bramlett's future payments, reduced to the extent necessary by the support needs of the beneficiary and any dependents, from the Trust principal pursuant to California Probate Code section 15306.5.

27. The Chapter 7 Trustee, under California law, is entitled to up to twenty-five percent of Ms. Bramlett's remaining share of the proceeds in the Trust.

28. The Order Disallowing claims (ECF No. 33) has no effect on this determination. That order was not a final order, nor adjudicated on the merits.

## ORDER

Based on the above findings of fact and conclusions of law, it is ORDERED that within two weeks of the court's entry of this order, Defendants are ordered to turnover twenty-five percent of Ms. Bramlett's share of the Trust principal to Kevin O'Rourke, as the Chapter 7 Trustee for the bankruptcy estate of Daniel and Colette Bramlett.

///End of Order///